UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARLYS JENSEN, | ) | CIV. 09-4057-KES |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | DOR-O-MATIC'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT AND |
| | ) | GRANTING IN PART AND |
| HY-VEE, CORPORATION and | ) | DENYING IN PART PLAINTIFF'S |
| DOR-O-MATIC (ILLINOIS) LLC., | ) | MOTION FOR PARTIAL |
| | ) | SUMMARY JUDGMENT |
| Defendants. | ) | |

Defendant Dor-O-Matic (Illinois) LLC moves for summary judgment.
Plaintiff, Marlys Jensen, resists Dor-O-Matic's motion for summary judgment[1]
and moves for partial summary judgment on the affirmative defenses of
contributory negligence, assumption of the risk, and failure to mitigate. Dor-
O-Matic resists Jensen's motion for partial summary judgment.

**BACKGROUND**

The entrance to Hy-Vee contains an automatic door, which was
manufactured by Dor-O-Matic. Normally, as a customer approaches the
entrance, the right and left door panels automatically open toward the interior
of the building. After the customer enters the building, the doors automatically
return to their closed position. The automatic doors are also capable, however,
of being "exits." This happens when an individual pushes on the door from the

---

[1] Hy-Vee joins Jensen's opposition to Dor-O-Matic's motion for summary
judgment. Docket 58.

inside, which results in the door swinging out towards the parking lot. When this happens, a device mounted above each door leaf, called a breakaway switch, is supposed to shut the power off to the door.

On November 10, 2008, the right leaf of the automatic door had been pushed open from the inside, toward the parking lot. Instead of the power being shut off, however, the right leaf of the automatic door continued to automatically close and open opposite to what an entrance door would otherwise do. That is, when no one was near the door, the right leaf would remain open toward the parking lot; as a customer approached the door, it would automatically close.

While the automatic door was in this state, Jensen attempted to enter the Hy-Vee grocery store. As she entered, the right leaf closed and knocked Jensen to the ground. She suffered injuries to her wrist, ankle, and head. Jensen filed suit against Hy-Vee alleging a negligence claim and a premises liability claim. Jensen also brought sought against Dor-O-Matic alleging a negligence claim and a strict products liability claim. Hy-Vee and Dor-O-Matic both deny liability and raise the affirmative defense of contributory negligence. Dor-O-Matic also raises the affirmative defenses of assumption of the risk and failure to mitigate damages. Hy-Vee and Dor-O-Matic have also filed cross-claims against each other.

**STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] "A party asserting that a fact cannot be . . . disputed must support the assertion" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)-(B). The movant can also establish the absence of a disputed material fact by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The burden is initially placed on the moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P.

---

[2] Rule 56 was amended April 28, 2010, effective December 1, 2010. The comments to the 2010 amendments make clear, however, that the "standard for granting summary judgment remains unchanged."

56(c)(1)(A)-(B). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In determining whether a genuine issue for trial exists, the court applies the standard and burden associated with the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]").

South Dakota substantive law applies to Jensen's claims because this case is before the court on the basis of diversity. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007) ("We apply South Dakota substantive law because this diversity action was brought in the District of South Dakota, and the district court sitting in diversity applies the substantive law of the state in which it is located." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))).

**ANALYSIS**

**I.    Dor-O-Matic's Motion for Summary Judgment**

Dor-O-Matic argues that it is entitled to summary judgment with regard to Jensen's negligence and strict product liability claims. Jensen's negligence

4

claim includes a defective design claim and a failure to warn claim. Jensen's strict product liability claim is also based on a defective design theory and a failure to warn theory.

### A.    Jensen's Negligent Defective Design Claim

Dor-O-Matic argues that there is no expert testimony demonstrating that the automatic door was defectively designed. Jensen argues that expert testimony is not needed to establish a defective design. Jensen alternatively argues that if expert testimony is necessary, there is sufficient expert testimony to show a design defect with the door.

"To establish liability in negligence for defective product[,] . . . a plaintiff must show that the defendant failed to use the amount of care in designing . . . the product that a reasonably careful designer . . . would use in similar circumstances to avoid exposing others to a foreseeable risk of harm." *Burley v. Kytec Innovative Sports Equip., Inc.*, 737 N.W.2d 397, 407 (S.D. 2007) (citing Restatement (Second) Torts § 395). "To determine whether the designer . . . used reasonable care, one must balance what the designer . . . knew or should have known about the likelihood and severity of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm." *Id.* at 407 (citing Restatement (Second) Torts § 395).

"Whether a manufacturer knew or should have known of a particular risk involves technical issues . . . which lie beyond the comprehension of most

5

jurors." *Id.* "Indeed, expert testimony is ordinarily required to establish a claim of negligence in a products liability action." *Id.* The court agrees with the reasoning in *Burley* and finds that Jensen's defective design claim requires expert testimony demonstrating that the door contained a design defect.

Hy-Vee's expert witness, Jens Mogensen, testified that he thought the breakaway switch had not been triggered because the cam "went under" the breakaway switch rather than trigger it. Docket 44-2 at 6. Mogensen also testified that the manufacturer could have designed the automatic door so that it had a longer cam. Docket 44-2 at 7. A jury could reasonably infer from this testimony that the automatic door was designed with a cam that was too short to trigger the breakaway switch. Mogensen also testified that the purpose of the breakaway switch was to cut the power to the door when triggered, which would mean that there would be "no way that the door [could] come back and close on someone[.]" Docket 44-2 at 4. This evidence supports Jensen's position that the door was defectively designed with a cam that was too short to trigger the breakaway switch, which would have prevented the door from automatically closing on an entrant after the door had been pushed open from the inside. In considering Mogensen's testimony in the light most favorable to Jensen, the court finds that there is sufficient evidence for the jury to reasonably conclude that the automatic door contained a design defect.

Dor-O-Matic also argues that there is no expert testimony establishing that the alleged design defect caused Jensen's injuries. Jensen argues that expert testimony is not needed to establish causation with regard to the negligent defective design claim. Jensen alternatively argues that there is sufficient expert testimony that would allow the jury to infer causation.

A "plaintiff must prove, among other things, that because of the manufacturer's [negligence], the accident occurred." *Burley*, 737 N.W.2d at 408. *Burley*'s discussion about expert testimony with regard to causation in a negligent defective design claim was based on a rather complicated theory of causation. Specifically, the issue was whether the defendant failed to test and inspect its product with regard to the dangerousness of a hook that could be bent by a user. *See id.* at 407 (explaining that "even if the bendability of the hook arguably created a defect or dangerous condition in the product, expert testimony is needed to explain to the jury how the design of the [product] . . . proximately caused [the plaintiff's] injuries"). The South Dakota Supreme Court's decision in *Burley* therefore recognizes that expert testimony is required when there is a complicated causation issue in a product liability case. *See id.* at 408.

Jensen's causation theory appears to be that the door automatically swung shut and hit Jensen as she entered because the breakaway switch that otherwise would have stopped the door from forcefully closing on an entrant

7

was not triggered. According to Jensen, it is "patently obvious that the accident would not have happened" had the door been designed in such a manner so that it would not automatically close on an entrant after the door had been pushed open from the inside. *Cf. id.* at 407 (citations omitted). Thus, Jensen argues that expert testimony is not required because the negligent defective design claim is not as complicated as the issue in *Burley*.

As was the case in *Burley*, however, there is evidence that the door may have been altered after the door was manufactured. For example, Jensen's own expert testified that there is evidence that the breakaway switch had been subjected to "extensive wear and tear" by customers and employees who pushed the doors open from the inside. Docket 44-13 at 5. Another witness testified that the door suffered some "metal fatigue" that may have prohibited the door from functioning properly. Docket 44-5 at 6. The court therefore finds that expert testimony is required to help the jury determine whether a subsequent alteration to the door or the alleged design defect caused Jensen's injuries. *See Burley*, 737 N.W.2d at 408 ("Here, it is outside the common experience and capability of a jury to determine . . . whether the alteration of the product by Horacek or [the defendant's negligence] was a proximate or legal cause of [the plaintiff's] injuries.").

Hy-Vee's expert, Mogensen, testified that had the breakaway switch been triggered, the automatic door would not have forcefully closed on Jensen

8

as she entered Hy-Vee. Docket 44-2 at 4 (explaining that if the breakaway switch is triggered, "there's no power to [the door,] there's no way that door can come back and close on someone if it's operating appropriately"). Mogensen also testified that the cam "went under" the breakaway switch and that the cam could have been made longer. Docket 44-2 at 6, 7. Thus, the jury could reasonably conclude, based on Mogensen's testimony, that the cam was too short to ensure the triggering of the breakaway switch, which caused the door to continue to operate automatically and close on Jensen as she tried to enter Hy-Vee. *See Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 256 (S.D. 1976) ("No specific defect need be shown if the evidence, direct or circumstantial, *permits the inference that the accident was caused by a defect.*" (emphasis added)) *overruled on other grounds*, *First Premier Bank v. Kolcraft Enters., Inc.*, 686 N.W.2d 430 (S.D. 2004). Viewing the evidence in the light most favorable to Jensen, the court finds that there is sufficient evidence to support Jensen's claim that a design defect in the automatic door caused the automatic door to close and hit her as she tried to enter Hy-Vee.

Dor-O-Matic argues in a footnote that Mogensen is not a qualified expert because he is not an engineer or designer of automatic doors. Docket 43 at 11 n.9. Though not entirely clear, Dor-O-Matic appears to argue that Mogensen's testimony is not admissible because he is not a qualified to give an expert opinion on whether the door contained a dangerous defect. *See generally* Fed.

R. Evid. 702 (requiring the witness be "qualified as an expert by knowledge, skill, experience, training, or education"). Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Thus, the court must determine whether Mogensen's testimony is admissible.

The facts and issues in *Moran v. Ford Motor Co.*, 476 F.2d 289 (8th Cir. 1973), appear most on point to this issue. In *Moran*, the "[p]laintiff contend[ed] that [the] upper ball joint of the [car's] suspension system was defective prior to the accident." *Id.* at 290. The plaintiff wanted to introduce expert testimony from "an owner and operator of a body and fender shop" to support his claim that the car contained a design defect. *Id.* The expert "had been in the auto repair business for eighteen years and had frequently examined wrecked cars." *Id.* While the trial court "believed [the expert] was 'unquestionably qualified to do repair work[,]' " he was not permitted to testify about whether the accident was caused by a defective suspension system. *Id.* at 290-91. The Eighth Circuit Court of Appeals reversed the trial court's ruling because the expert "possessed sufficient knowledge and practical experience to make him well qualified as an expert witness." *Id.* at 291.

Mogensen's affidavit establishes that he has "worked installing, servicing and maintaining automatic doors . . . for eighteen (18) years[.]" Docket 44-14 at 1. Mogensen also claims to "have extensive knowledge in the installation,

10

service, operation and maintenance of automatic doors[.]" Docket 44-14 at 1.
Dor-O-Matic does not dispute Mogensen's claims about his practical
experience as set forth in his affidavit.

Mogensen's eighteen years of experience repairing automatic doors is
substantially similar to the body shop expert's eighteen years of experience
repairing automobiles in *Moran*. *See Moran*, 476 F.2d at 290. Mogensen also
has extensive knowledge about automatic doors. *See id.* (recognizing that the
expert "frequently examined" and was "familiar with the function and
operation of" suspension systems). Accordingly, the court finds that Mogensen
is qualified as an expert to testify about whether the automatic door contained
a dangerous defect that caused the accident. *Id.* at 291 (emphasizing that
"practical experience . . . may be the basis of qualification" (citations omitted));
*see also United States v. Jordan*, 236 F.3d 953, 955 (8th Cir. 2001) ("An
individual can qualify as an expert by possessing knowledge gained from
practical experience." (quotations and citation omitted)). The court therefore
rejects Dor-O-Matic's argument that Mogensen's testimony is inadmissible
because he is not an engineer or a designer of automatic doors.

Dor-O-Matic also argues that Mogensen's testimony about the cam is
not admissible because he did not "show whether such a modification would
still allow the door to function properly while ensuring its required safety
function of allowing emergency exits." Docket 59 at 13 n.3. In support of this

argument, Dor-O-Matic relies on the decision in *Unrein v. Timesavers, Inc.*, 394 F.3d 1008 (8th Cir. 2005), which states that "[a]n expert proposing safety modifications must demonstrate by some means that they would work to protect the machine operators but would not interfere with the machine's utility." *Id.* at 1012 (citing *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084 (8th Cir. 1999); *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293 (8th Cir. 1996)).

First, Mogensen's testimony about the cam not triggering the breakaway switch is not properly characterized as a "safety modification." Rather, his testimony explains why the automatic door operated the way it did on the date in question. Even if the testimony were construed as a proposed "safety modification," the court rejects Dor-O-Matic's argument that Eighth Circuit law precludes his testimony.

The decisions in *Unrein*, *Jaurequi*, and *Peitzmeier*, affirmed the trial court's decision to exclude the proffered expert testimony because the testimony was found to be unreliable. *See Unrein*, 394 F.3d at 1012 ("We conclude that [the expert's] proffered opinion lacked indicia of reliability for other reasons."); *Jaurequi*, 173 F.3d at 1084 ("We therefore hold that the district court did not abuse its broad discretion in concluding that the proffered testimony regarding the lack of awareness barriers flunked the reliability prong of *Daubert* [*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)].");

12

*Peitzmeier*, 97 F.3d at 296-298 ("Having carefully reviewed [the expert's] proffered testimony on design defect in light of the [reliability] factors enumerated in *Daubert*, we conclude that the District Court did not abuse its discretion in excluding this testimony because of its failure to satisfy the standards of Rule 702."). These cases do not stand for the proposition asserted by Dor-O-Matic: that an expert's testimony is only admissible with regard to a design defect claim if the expert has demonstrated that the proposed "safety modification" would not interfere with the machine's utility. Rather, these cases stand for the well accepted principle that an expert's opinion must be found by the court to be sufficiently reliable before it can be admitted into evidence.

The court recognizes that some of the reliability factors[3] set forth in *Daubert* are not satisfied in this case. This is because Mogensen's testimony, which suggests that the cam was not long enough to ensure the triggering of the breakaway switch, is rather straightforward. It is unlikely that anyone would publish an article explaining the common sense idea that a rod needs to be long enough to reach the breakaway switch if it is supposed to trigger the switch. Also, it is presumably unnecessary to "test" the theory that a cam

---

[3] These factors include "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." *Peitzmeier*, 97 F.3d at 297 (citation omitted).

cannot trigger a switch if the cam does not reach the switch.[4] As recognized in *Daubert*, however, the Supreme Court did "not presume to set out a definitive checklist or test." 509 U.S. at 593.

Here, the court finds that the last *Daubert* factor, whether the theory has been generally accepted, sufficiently demonstrates that Mogensen's testimony, which allows the jury to infer that the cam was too short to trigger the breakaway switch, is sufficiently reliable. This testimony would also assist the jury in determining whether the door contained a dangerous defect that caused the door to close on Jensen as she tried to enter Hy-Vee. As the Supreme Court recognized in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596 (citation omitted). For these reasons, the court finds that this testimony is sufficiently reliable. *Cf. Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." (citation omitted)).

_____

[4] Because such tests could be conducted, however, the first factor, whether the theory or technique can be tested, arguably weighs in favor of demonstrating the testimony's reliability.

14

Dor-O-Matic also argues throughout its briefs that there is substantial evidence demonstrating that the door was misused or altered by misuse. The court rejects this argument because, as Dor-O-Matic acknowledges, the door was specifically designed so that it could be opened by pushing from the inside in case of an emergency. Docket 43 at 2. The fact that this may have been done repeatedly does not mean that the door had been misused. Simply put, the door was designed to swing both ways.

The court recognizes that there is evidence supporting Dor-O-Matic's position that the door and the breakaway switch had been subjected to substantial wear and tear. But the court must view the facts in favor of Jensen and draw all reasonable inferences in favor of Jensen because she is the nonmoving party. *See Matsushita*, 475 U.S. at 586. Thus, the court finds that summary judgment is not appropriate with regard to Jensen's negligent design defect claim because there is a material issue of fact as to whether the door was designed with a dangerous defect that caused Jensen's injuries.

**B.   Jensen's Negligent Failure to Warn Claim**

A negligent failure to warn claim includes the following six elements:

(1)   the manufacturer knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner;

(2)   the manufacturer knew or reasonably should have known that users would not realize the danger;

15

(3)     that the manufacturer failed to exercise reasonable care and adequately warn of the danger or instruct on the safe use of the product;

(4)     that a reasonable manufacturer under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product;

(5)     that the claimant was harmed; and

(6)     that the manufacturer's failure to warn or instruct was a proximate or legal cause of the claimant's injury.

*Burley*, 737 N.W.2d at 410 (citations omitted).

Dor-O-Matic's motion for summary judgment with regard to the failure to warn claim is based on the last element, causation. Specifically, Dor-O-Matic argues that there is no expert testimony showing that the lack of warning was the legal cause of Jensen's injuries. Jensen argues that expert testimony is not required to establish a causal relationship between the failure to warn and her injuries.

In *Burley*, the South Dakota Supreme Court emphasized that "[c]ausation is an essential element in a [negligent or strict liability] failure to warn claim." *Id.* at 409-10. The court then explained that a plaintiff "must establish a causal relationship between [the manufacturer's] failure to warn and [the] injury." *Id.* at 410. "This requires testimony about the product's design and how . . . the lack of warnings included with or on the [product] was the legal cause of her injuries." *Id.* at 410-411. The court concluded that "causation for failure to warn requires expert testimony." *Id.* at 411.

16

Jensen's only argument with regard to the negligent failure to warn claim is that "for the same reasons expert testimony is not necessary to prove causation on Mrs. Jensen's strict liability and negligent design claims, expert testimony is likewise not necessary[.]" Docket 54 at 13. The court disagrees. Unlike Jensen's negligent design defect claim, the basis of Jensen's failure to warn claim against Dor-O-Matic is unclear. Jensen has not explained how Dor-O-Matic's alleged failure to warn caused her injuries. Thus, the court finds that expert testimony establishing a causal connection between the lack of warning and Jensen's injuries is needed with regard to the negligent failure to warn claim.

Moreover, Jensen has not identified any testimony explaining how "the lack of warnings . . . was the legal cause of her injuries." *See Burley*, 737 N.W.2d at 411. Indeed, Jensen does not offer *any* explanation, testimony, or evidence supporting her claim that the lack of warnings caused her injuries. Thus, even if expert testimony was not required, the court finds that there is insufficient evidence to create a material issue of fact as to whether the lack of warning caused Jensen's injuries.

Jensen appears to argue that the doctrine of res ipsa loquitur negates any need for expert testimony in this case.[5] In order to invoke the res ipsa

---

[5]Jensen does not specifically raise this argument in her discussion of the negligent and strict liability failure to warn claims.

17

loquitur doctrine, "the instrumentality which caused an injury must have been under the full management and control of the defendant or his servants[.]" *Malloy v. Commonwealth Highland Theatres, Inc.*, 375 N.W.2d 631, 636 (S.D. 1985) (quoting *Wagner v. Coca-Cola Bottling Co., Inc.*, 319 N.W.2d 807, 807-08 (S.D. 1982). The record, however, is clear that the "the instrumentality which caused [the] injury" was not "under the full management and control of" Dor-O-Matic at the time of the incident.

Jensen argues that the doctrine should apply because the door was in the exclusive control of Dor-O-Matic at the time the door was designed.[6] In support of this argument, Jensen relies on Ohio state case law, which holds that "the instrumentality causing the injury was, at the time of injury, *or at the time of creation of the condition causing the injury*, under the exclusive management and control of the defendant." *Stegman v. Nickels*, 2008 WL 4684689, at *4 (Ohio Cr. App. Oct. 24, 2008) (emphasis added) (citing *Morgan v. Children's Hosp.*, 480 N.E.2d 464, 466 (1985)). Jensen did not identify any controlling authority indicating that South Dakota's application of res ipsa loquitur is similar to Ohio's law.

South Dakota law indicates that the res ipsa loquitur doctrine only pertains to the issue of negligence. *See Malloy*, 375 N.W.2d at 636 ("[W]hen

---

[6] Jensen does not, however, identify any evidence in the record to support this claim.

applicable, the facts and circumstances attending the incident give rise to an inference or presumption of *negligence* on the part of the defendant." (emphasis added) (citation omitted)). The issue here, however, pertains to the causation element, not the duty and breach elements.

As the South Dakota Supreme Court emphasized in *Burley*, "the fact that an accident occurred while [the plaintiff] was using the [product] does not perforce mean that [the manufacturer's] failure to warn was the legal cause of [the plaintiff's] injuries." 737 N.W.2d at 410. Jensen has not identified any evidence, in the form of expert testimony or otherwise, explaining how Dor-O-Matic's failure to warn caused her injuries. Thus, the court grants Dor-O-Matic's motion for summary judgment with regard to Jensen's negligent failure to warn claim because there is insufficient evidence that would allow the jury to reasonably conclude that Dor-O-Matic's alleged failure to warn caused Jensen to be struck by the door as she tried to enter Hy-Vee.

## C.   Jensen's Strict Product Liability Claims

With regard to the strict product liability claims, Dor-O-Matic argues that there is no evidence that the automatic door contained a defect when it left the manufacturer, Dor-O-Matic, and that there is no expert testimony that the defect caused Jensen's injuries. For the reasons already expressed above, the court rejects Dor-O-Matic's argument because there is sufficient expert testimony that would allow the jury to reasonably find that the door contained

a design defect that caused her injuries. Thus, the court denies Dor-O-Matic's motion for summary judgment with regard to Jensen's strict product liability design defect claim.

Dor-O-Matic also argues that there is no expert testimony to support the strict product liability failure to warn claim. As is the case with a negligent failure to warn claim, a strict liability failure to warn claim requires evidence that lack of warning "was the legal cause of [her] injuries." *See Burley*, 737 N.W.2d at 409 (alteration in original) (citation omitted). And "[c]ausation is an essential element in a [negligent or strict liability] failure to warn claim." *Id.* at 411. As stated above, Jensen has not identified any evidence showing that Dor-O-Matic's alleged failure to warn caused Jensen's injuries. Thus, the court grants Dor-O-Matic's motion for summary judgment with regard to Jensen's strict product liability failure to warn claim.

## II.   Jensen's Motion for Partial Summary Judgment

Jensen moves for partial summary judgment on the affirmative defense of contributory negligence, which is raised by Dor-O-Matic and Hy-Vee. Jensen also moves for summary judgment on the affirmative defenses of assumption of the risk and failure to mitigate damages, which were raised by Dor-O-Matic.[7]

---

[7] Hy-Vee's answer to Jensen's amended complaint does not raise these two affirmative defenses.

## A.    Contributory Negligence

Jensen argues that she is entitled to summary judgment with regard to the affirmative defense of contributory negligence because there is no evidence that she was negligent. Dor-O-Matic resists Jensen's motion for summary judgment and argues that there is sufficient evidence for the jury to conclude that Jensen was contributorily negligent when she attempted to enter Hy-Vee. Hy-Vee has not responded to or joined Dor-O-Matic's opposition to the motion.

"Contributory negligence is conduct by the plaintiff that amounts to a 'breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.' " *Parker v. Casa Del Rey-Rapid City, Inc.*, 641 N.W.2d 112, 117 (S.D. 2002) (quoting *Starnes v. Stofferahn*, 160 N.W.2d 421, 426 (S.D. 1968)). "Contributory negligence . . . [is] normally [a] question[] for a jury to decide unless 'the facts are not in dispute or of such a nature that reasonable men could not differ.' " *Id.* at 117 (citations omitted). Under South Dakota law, "[w]here plaintiff's contributory negligence is more than slight compared to defendant's negligence, plaintiff is barred from recovery." *Harmon v. Washburn*, 751 N.W.2d 297, 302 (S.D. 2008) (quoting *Johnson v. Armfield*, 672 N.W.2d 478, 481 (S.D. 2003)).

21

Jensen argues that the undisputed facts demonstrate that she was not contributorily negligent. In support of her argument, Jensen relies on the following undisputed facts: Jensen did not see the automatic door get pushed open from the inside prior to her accident; she did not see the door open or close before she tried to enter Hy-Vee that day; and she was not aware of any instances where the doors had operated improperly before the accident. Docket 47 at 2; Docket 51 at 1. Dor-O-Matic argues that a jury could reasonably conclude that Jensen was contributorily negligent because the video of the incident shows several other people entering the Hy-Vee prior to Jensen without being hit by the automatic door.

Without addressing whether it is appropriate to consider the fact that other people were able to enter the store without being hit by the door, the court finds that there is sufficient evidence to allow the issue of contributory negligence to be decided by the jury. Jensen testified that the door, which was located on her right side, struck her left wrist when it closed on her. Docket 49-1 at 2. And the video of the incident shows that the automatic door closed on Jensen in such a manner that it closed in front of her rather than hit her from behind. There is no evidence that Jensen was incapable of avoiding the door if she saw it closing. A jury could therefore reasonably conclude that Jensen saw the door closing but failed to avoid it. Viewing the facts in the light most favorable to the nonmoving party, Dor-O-Matic, the court finds that

22

there is sufficient evidence for the jury to reasonably conclude that Jensen was contributorily negligent for failing to avoid the closing door.

Jensen's motion for summary judgment on the affirmative defense of contributory negligence was also directed at Hy-Vee. Hy-Vee, however, has not responded. Nonetheless, the lack of response does not automatically result in summary judgment in favor of Jensen. *See Mack v. Dillon*, 594 F.3d 620, 622-23 (8th Cir. 2010) (explaining that a "failure to respond to [a] summary judgment motion does not automatically compel resolution in favor of moving party" and that a "reviewing court must still determine whether entry of summary judgment was appropriate" (citing *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Mo.*, 27 F.3d 327, 329 n.1 (8th Cir. 1994)) (other citation omitted)). For the reasons expressed above, there is a material issue of fact as to whether Jensen was contributorily negligent. Thus, the court denies Jensen's motion for summary judgment on the issue of contributory negligence as raised by Dor-O-Matic and Hy-Vee.

## B.    Assumption of the Risk

Jensen also argues that she is entitled to summary judgment with regard to Dor-O-Matic's assumption of the risk defense. Dor-O-Matic argues that there is sufficient evidence for the jury to reasonably conclude that Jensen assumed the risk.

"Assumption of the risk exists . . . when an individual knows that the danger exists, appreciates the character of the danger and 'voluntarily accept[s] such risk by having a sufficient amount of time, knowledge, and experience to make an intelligent choice.' " *Parker*, 641 N.W.2d at 117 (second alteration in original) (citations omitted). Generally speaking, an assumption of the risk issue is to be decided by the jury. *Mack v. Kranz Farms, Inc.*, 548 N.W.2d 812, 814 (S.D. 1996) ("Ordinarily, questions of negligence, contributory negligence and assumption of risk are for the jury, provided there is evidence to support them." (internal quotations and citations omitted)). Summary judgment is appropriate, however, if there is no evidence to support any one of the required elements. *Id.* at 814 ("Assumption of the risk is an affirmative defense and failure to establish any one of the above three criteria is fatal." (citation omitted)).

Dor-O-Matic argues that Jensen had constructive knowledge of the risk. An individual has "constructive knowledge of a risk if the risk is so plainly observable that anyone of 'competent faculties will be charged with knowledge of it.' " *Carlson v. Peterson*, 756 F.2d 72, 73 (8th Cir. 1985) (citation omitted) (applying South Dakota law). Here, however, it is undisputed that Jensen did not see the automatic door get pushed open from the inside prior to her accident. She did not see the door open or close before trying to enter Hy-Vee. And Jensen was not aware of any instances where the doors had operated

24

improperly before the accident. Docket 47 at 2; Docket 51 at 1. Therefore, before attempting to enter Hy-Vee, Jensen only knew that the right hand door to Hy-Vee was open and the left hand door was closed. This evidence establishes that there was no "plainly observable" risk prior to Jensen's attempted entry into Hy-Vee.

Dor-O-Matic argues that Jensen nonetheless assumed the risk because she did not avoid the door as it closed on her like the other entrants were able to do. Assuming that the closing door constitutes a "plainly observable" risk, Dor-O-Matic's argument that Jensen assumed the risk still fails. The evidence in the record reveals the Jensen was "surprised" by the closing door. Docket 49-1 at 2. And there is no evidence that Jensen saw the door closing and voluntarily chose to stay in its path while it proceeded to hit her. Based on the record before the court, it is clear that a jury could not reasonably find that Jensen "voluntarily accept[ed]" the risk after having "a sufficient amount of time [or] knowledge." *See Parker*, 641 N.W.2d at 117. Thus, the court finds that Jensen is entitled to summary judgment with regard to Dor-O-Matic's assumption of the risk defense.

### C.   Failure to Mitigate Damages

Jensen argues that summary judgment is appropriate with regard to Dor-O-Matic's affirmative defense that she failed to mitigate her damages by refusing to wear a boot that was recommended by her doctor. Dor-O-Matic

25

argues that summary judgment is not appropriate because there is sufficient evidence for the jury to find that Jensen failed to mitigate her damages.

"[A] person who suffers personal injury must exercise reasonable care to minimize the existing injury and prevent further injury and damages." South Dakota Pattern Jury Instructions, Civil § 50-140-10. "Those experiencing damage cannot allow injury to continue and increase without expending reasonable effort to avoid further loss." *Wasland v. Porter Auto & Marine, Inc.*, 600 N.W.2d 904, 907 (S.D. 1999) (citations omitted). The obligation to mitigate damages, however, "does not require more than that the injured party exercise diligence to avoid further loss." *Boxa v. Vaughn*, 674 N.W.2d 306, 314 (S.D. 2003).

Jensen argues that there is no evidence to support the claim that her refusal to wear the boot while on vacation caused any further injury or damages.[8] The boot appears to have been intended to protect Jensen's Achilles' tendon, which contained a nodule. Docket 49-6 at 2. While Jensen admits that the tendon never hurt, she testified that there was some concern that it might burst. Docket 53-2 at 2. There is also evidence that, after her vacation, an MRI showed tendon degeneration. Docket 49-6 at 1.

---

[8] Jensen does not dispute that whether her refusal to wear the boot was reasonable would be a question for the jury. Docket 61 at 6.

The nature of Jensen's requested damages is not clear. Because Jensen may be seeking to recover for pain, suffering, and disability, and the boot would have otherwise prevented or reduced the level of tendon degeneration, the issue must be decided by a jury. *See id.* ("Those experiencing damage cannot allow injury to continue and *increase* without expending reasonable effort to avoid further loss." (emphasis added)). Therefore, the court denies Jensen's motion for summary judgment with regard to the mitigation of damages issue. It is

ORDERED that Dor-O-Matic's motion for summary judgment (Docket 41) is denied;

IT IS FURTHER ORDERED that Jensen's motion for partial summary judgment (Docket 45) is denied with regard to the affirmative defense of contributory negligence and failure to mitigate damages;

IT IS FURTHER ORDERED that Jensen's motion for partial summary judgment (Docket 45) is granted with regard to the affirmative defense of assumption of the risk.

Dated May 13, 2011.

BY THE COURT:


/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE

27